No. C-380

## Alliance Mutual Casualty Company v. Barbara L. Duerson and Mary W. Duerson
### (518 P.2d 1177)

Decided February 11, 1974.

Duane O. Littell, Peter F. Jones, for petitioner.

Rector, Melat & Wheeler, Leo W. Rector, for respondents.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

Certiorari to the Court of Appeals was granted to review the decision in *Alliance Mutual Casualty Company v. Duerson,* 32 Colo. App. 157, 510 P.2d 458. The controversy involves the validity and application of uninsured motorist provisions in automobile public liability policies.

The case was submitted to the trial court on stipulated facts. In November 1969, Mary Duerson was injured while riding as a passenger on a motorcycle owned and operated by Dennis W. Wade, which was struck by an automobile driven by an uninsured motorist. Wade was covered by a liability insurance policy with State Farm Mutual Auto Insurance Company (State Farm) which provided uninsured motorist protection for passengers on Wade's motorcycle. Mary Duerson was covered by a family automobile liability insurance policy with Alliance Mutual Casualty Company (Alliance),· issued to her mother, Barbara Duerson. The Alliance policy insured Mary Duerson while a passenger in other motor vehicles and also provided uninsured motorist protection. Both the State Farm and the Alliance policies limited the uninsured motorist liability to $10,000.

State Farm paid its policy limit of $10,000 to Barbara Duerson as guardian for Mary Duerson, in full settlement of Mary's uninsured motorist claim against it. Alliance, however,

refused payment on the uninsured motorist claim made thereafter against it. Alliance then instituted this declaratory judgment action to have a determination of its rights and obligations as insurer of respondents Barbara and Mary Duerson.

The district court found that the "other insurance" clause of the Alliance policy was valid and enforceable and that it barred recovery from Alliance as an excess insurer when its policy limits were the same as those of the primary insurer. The Court of Appeals reversed, finding the "other insurance" clause to be contrary to public policy as expressed by the uninsured motorist statute, 1965 Perm. Supp., C.R.S. 1963, 72-12-19 and 20. As we understand the Court of Appeals decision, it appears to have misapprehended our pronouncement in *Certified Indemnity Company v. Thompson,* 180 Colo. 342, 505 P.2d 962.

The pertinent provisions of the Alliance policy, which are the same as those of the State Farm policy, as recited in the Court of Appeals opinion, are set forth below.[1] In substance

---

[1] "[1] To pay all sums which the insured or its legal representatives shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury' sustained by the insured caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile.

"[2] Other insurance. With respect to bodily injury to an insured while occupying an automobile not owned by the named insured, the insurance under Part IV [uninsured motorist provision] shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.

"[3] Except as provided in the foregoing paragraph if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable for a greater proportion of any loss to which this coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance."

they provide (1) that Alliance will pay "all sums" due as a result of an accident with an uninsured motorist; (2) that where the insured is injured in a vehicle not owned by him, which is covered by other similar insurance applicable as primary insurance, recovery may be had from Alliance only to the extent that the limit of liability of the policy of Alliance exceeds the limit provided in the other similar insurance; and (3) that where recovery from Alliance may be had, its indemnity costs are to be shared on a pro-rata basis with other similar insurers.

The Court of Appeals described the critical question to be decided in this case as whether "stacking" or "pyramiding" is permissible under the uninsured motorist insurance policy provisions where more than one policy is involved. We do not view the issue to be so broad. A variety of stacking or pyramiding situations may require different and diverse results, and no general answer may be given to the question as posed. As we view the question, we are concerned with the narrow issue of validity and interpretation of the uninsured motorist provision as set forth above, in light of the uninsured motorist statute, 1965 Perm. Supp., C.R.S. 1963, 72-12-19 and 20, and the claims of the parties as made in the fact situation hereinbefore described.

▮ Contrary to the contentions of respondents in their argument in support of the Court of Appeals decision, we do not find the uninsured motorist provisions of the Alliance policy to be ambiguous. They provide uninsured motorist protection but, in specified instances, only as *excess* coverage. Simply stated, this means that recovery can be had only if the limit of liability stated in the excess carrier's policy exceeds that stated in the primary carrier's policy. In the present case it does not.

In *Certified Indemnity Company v. Thompson, supra,* construing an identical "other insurance" provision, we said: "We believe this provision [other insurance] is applicable only when those who fall within the definition of an insured are injured while occupying an automobile *not* owned by the *principal named insured.* In the present factual context this provision would apply to a situation where the principal

named insured, Thompson, Jr., his spouse, members of his household and those who come under the definition of 'insured' are injured by an uninsured motorist while occupying a car 'not owned' by Thompson, Jr. In such a situation the coverage under Thompson, Jr.'s policy would be *excess* over any other uninsured motorist's coverage available to those injured. In short, the coverage of the automobile in which they are injured is primary and the coverage on the automobiles which are not involved, such as Thompson, Sr.'s, in the instant case, is 'excess.' [Citations omitted.]"

We denied a reduction of liability in *Certified Indemnity* because Certified Indemnity Company was the primary insurer and the insured family member was injured while occupying an automobile owned by the named insured. It, therefore, became liable under its uninsured motorist provision to the fullest extent as a primary insurer, and the fact that the excess insurer there made an improvident, premature settlement with the claimant could not relieve Certified Indemnity Company of compliance with its total obligation as a primary carrier. Here, Mary Duerson was *not* occupying an automobile owned by the named insured in the Alliance policy, Barbara Duerson. Rather, the vehicle on which Mary Duerson was riding when injured — the motorcycle — was owned by Dennis W. Wade, and was insured by State Farm which we regard as the primary insurer as defined by *Certified Indemnity.* In this posture, Alliance thus becomes the excess insurer under the other insurance provisions of the Alliance policy. Nothing we said in *Certified Indemnity* dictates a contrary result.

■ We next consider whether Alliance's "other insurance" provision is repugnant to the public policy expressed by the uninsured motorist statute. The statute, set forth below,[2] requires that insurance companies issuing policies on

---

[2] *"Insurance protection against uninsured motorists.* — No automobile liability or motor vehicle liability policy, insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this

122

motor vehicles registered or principally garaged in this state offer uninsured motorist coverage. If not rejected by the named insured, the minimum amount of coverage required is as provided in the Motor Vehicle Financial Responsibility Law, which in this case was $10,000 per claimant and $20,000 per occurrence.[3]

Alliance contends, and we agree, that its policy guarantees the victim of an accident with an uninsured motorist protection in the statutory amount of $10,000 should the primary carrier fail to make payment. Here, the primary carrier, State Farm, did make full payment.

We note that a person purchasing a policy has three options: that of rejecting uninsured motorist coverage; that of purchasing it in a minimum amount; or that of purchasing it in an amount greater than that specified by statute. Rates are adjusted accordingly. In view of these options, we find

state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in section 13-7-3(11), C.R.S. 1963, as amended, under provisions approved by the insurance commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, that the coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage; and provided further, that unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with the policy previously issued to him by the same insurer." 1965 Perm. Supp., C.R.S. 1963, 72-12-19.

[3] " 'Automobile liability policy' or 'bond' means a liability policy or bond subject, if the accident has resulted in bodily injury or death, to a limit, exclusive of interest and costs, of not less than ten thousand dollars because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, to a limit of not less than twenty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and, if the accident has resulted in injury to or destruction of property, to a limit of not less than five thousand dollars because of injury to or destruction of property of others in any one accident." 1965 Perm. Supp., C.R.S. 1963, 13-7-3(11). The section since has been amended to require coverage of $15,000 per person and $30,000 per occurrence.

nothing offensive to public policy in an "other insurance" clause which denied recovery of additional sums over and above that provided by the primary insurance carrier.

The legislative "declaration of purpose" to the uninsured motorist statute, 1965 Perm. Supp., C.R.S. 1963, 17-12-20, expresses no intention to require full indemnification from all insurers of uninsured motorist victims.[4] Rather, the express intent is "to induce and encourage" all motorists to provide for their financial responsibility for the protection of others from financially irresponsible uninsured motorists. Had the legislature intended full indemnification it would not have granted the option of totally rejecting the uninsured motorist coverage.

In view of the foregoing, we will not speculate that the legislature intended to invalidate provisions in an insurance contract designed to limit liability as an excess insurer when there is available to the injured person primary insurance in the required statutory minimum amount. Our statute mandates only that insurance companies make available uninsured motorist coverage in an amount as prescribed by the Motor Vehicle Financial Responsibility Law.

Unlike Illinois, the coverage is not mandatory and may be rejected. Nevertheless, the Supreme Court of Illinois, construing its statute in *Putnam v. New Amsterdam Casualty Co.,* 48 Ill. 2d 71, 269 N.E.2d 97, concluded:

"The question of public policy, it seems to us, is largely

---

[4] *"Declaration of purpose.* — The general assembly is acutely aware of the toll in human suffering and loss of life, limb, and property caused by negligence in the operation of motor vehicles in our state. Although it recognizes that this basic problem can and is being dealt with by direct measures designed to protect our people from the ravages of. irresponsible drivers, the general assembly is also very much concerned with the financial loss visited upon innocent traffic accident victims by negligent motorists who are financially irresponsible. In prescribing the sanctions and requirements of section 72-12-19 and article 7 of chapter 13, *it is the policy of this state to induce and encourage all motorists to provide for their financial responsibility* for the protection of others, and to assure the widespread availability to the insuring public of insurance protection against financial loss caused by negligent financially irresponsible motorists." (Emphasis added.) 1965 Perm. Supp., C.R.S. 1963, 72-12-20.

manufactured. Construing an insurance contract accurately and giving it the effect which its language clearly commands, is not *ipso facto* a breach of public policy merely because it disappoints the innocent victim of an uninsured motorist."
*See also, Morelock v. Millers' Mutual Insurance Ass'n.,* 49 Ill. 2d 234, 274 N.E.2d 1; *Tindall v. Farmers Automobile Management Corp.,* 83 Ill. App. 2d 165, 226 N.E.2d 397.

The Court of Appeals chose to follow contrary decisions on this public policy question. *See, e.g., Sellers v. United States Fidelity & Guaranty Co.,* 185 So. 2d 689 (Fla.); *Moore v. Hartford Fire Insurance Co. Group,* 270 N.C. 532, 155 S.E.2d 128; *Bryant v. State Farm Mutual Automobile Ins. Co.,* 205 Va. 897, 140 S.E.2d 817.

In our view, however, the legislative intent is satisfied by coverage which assures that one injured by an uninsured motorist will be compensated at least to the same extent as one injured by a motorist who is insured in compliance with the Motor Vehicle Financial Responsibility Law. 1965 Perm. Supp., C.R.S. 1963, 13-7-1 *et seq.*

Adoption of the opposite rule would produce the anomalistic result of double recovery described by the Supreme Court of Illinois in *Putnam v. New Amsterdam Casualty Co., supra:*

"* * * [W]e should consider the effect of plaintiffs' proposal that the policies should be 'stacked' to allow full compensation. If such were mandated as a matter of public policy, motorists would be in the unusual position of preferring that any injuries sustained be at the hands of uninsured motorists rather than motorists who comply with the Financial Responsibility Law. In the case before us, for instance, plaintiffs have already recovered from their host's policy the amount they would have received had the tortfeasor been insured to the extent required by statute; but plaintiffs plead that they should be entitled to greater compensation, as a matter of public policy or legislative dictate, by virtue of the fact that the tortfeasor was not only a careless driver, but a financially irresponsible one as well."

Double recovery is neither contemplated by the insurance

contract nor by the uninsured motorist statute. The insurance contract assigns primary and excess liability postures to the company in uninsured motorist cases depending on whether or not the insured is riding in the named insured's vehicle at the time of injury. This we recognized as valid in *Certified Indemnity Company v. Thompson,* 180 Colo. 342, 505 P.2d 962. The policy permits recovery from the "excess" carrier if its coverage exceeds that of the primary carrier. Its rates are adjusted according to the amount of coverage requested and the anticipated primary and excess liability. Nothing in the policy, however, reduces recovery to less than that required by the Motor Vehicle Financial Responsibility Law. The minimum amount required by that statute is guaranteed in the event the primary carrier fails to make payment.

We conclude that the "other insurance" provision of the Alliance policy is not offensive to the public policy as expressed by the uninsured motorist statute. We are fortified in this view by the following jurisdictions which are in accord: *Werley v. United Auto. Assoc.,* 498 P.2d 112 (Alaska); *Transportation Insurance Co. v. Wade,* 106 Ariz. 269, 475 P.2d 253; *Harris v. Southern Farm Bureau Casualty Ins. Co.,* 247 Ark. 961, 448 S.W.2d 652; *Kirby v. Ohio Casualty Ins. Co.,* 232 Cal. App. 2d 9, 42 Cal. Rptr. 509; *Burcham v. Farmers Ins. Exchange,* 255 Iowa 69, 121 N.W.2d 500; *LeBlanc v. Allstate Ins. Co.,* 194 So.2d 791 (La. App.); *McCarthy v. Motor Vehicle Accident Indemnity Corp.,* 16 App. Div. 2d 35, 224 N.Y.S.2d 909; *Lyon v. Hartford Accident and Indemnity Co.,* 25 Utah 2d 311, 480 P.2d 739; *Miller v. Allstate Ins. Co.,* 66 Wash. 2d 871, 405 P.2d 712.

We reverse the judgment of the Court of Appeals, with directions to remand the cause to the trial court for reinstatement of the judgment in favor of petitioner.

MR. CHIEF JUSTICE PRINGLE dissents.

MR. JUSTICE ERICKSON does not participate.