579 P.2d 1178 (1978)
NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, an Ohio Corporation, Plaintiff-Appellant,
v.
Julia NEWTON, Ethel M. Clark, and Lynn Saunders, as mother and next friend of James Saunders, Jr., Defendants-Appellees.
No. 77-256.
Colorado Court of Appeals, Division I.
March 2, 1978.
Rehearing Denied March 23, 1978.
Certiorari Granted June 19, 1978.
*1179 Paul D. Renner, P. C., Douglas K. Goss, Denver, for plaintiff-appellant.
Frickey & Cairns, Denver, Criswell & Patterson, John A. Criswell, Englewood, for defendants-appellees.
Erick K. Furedy, Denver, for Steve S. Lovey, amicus curiae.
DeMoulin, Anderson, Campbell & Laugesen, Laird Campbell, Richard W. Laugesen, Jr., Denver, for State Farm Mut. Auto. Ins. Co., amicus curiae.
PIERCE, Judge.
Nationwide Mutual Fire Insurance Company (Nationwide) brought this declaratory judgment action under C.R.C.P. 57 in an attempt to clarify its obligations under a contract for automobile liability insurance. The sole issue presented is whether the claimants may recover amounts under the uninsured motorist provisions of the policy which duplicate amounts already paid under the Personal Injury Protection (P.I.P.) provisions of the same policy.[1]
The trial court ruled that this "double recovery" was proper, and was not precluded by the Colorado Automobile Accident Reparations Act (No-Fault Statute) § 10-4-701, et seq., C.R.S. 1973. We disagree and reverse the judgment.
In March of 1975, a car driven by Julia Newton, and containing two passengers, Ethel M. Clark and James Saunders, Jr., collided with a vehicle driven by Danny T. Mosely. A policy issued by Nationwide to Newton, and covering the car in question, was in full effect at the time of the accident. The policy included P.I.P. and uninsured motorist coverages. Mosely was uninsured at the time, and Newton, Clark and Saunders therefore filed claims against Nationwide under the uninsured motorist provisions. Pursuant to the terms of the policy, these uninsured motorist claims were submitted to arbitration.
Meanwhile, Nationwide had paid the three claimants a total of $5,865.05 under the policy's P.I.P. coverage. The uninsured motorist claims included these amounts, and the arbitrators did not deduct them from the total uninsured motorist award of $15,250. The district court upheld the arbitrator's award, and further declared that a total of $2,647.85 in additional P.I.P. benefits were due and owing. These additional benefits were also included in the arbitrator's award.
In their briefs, the parties, and particularly the amici curiae, have described the *1180 issue as being whether an insurer must coordinate P.I.P. and uninsured motorist benefits. We agree with the claimants that the statute cannot be construed as requiring this coordination, despite considerations of no-fault theory to the contrary. However, since the policy here specifically provided for such coordination, this case must be decided on the narrower issue of whether an insurer may coordinate P.I.P. and uninsured motorist benefits. While the no-fault statute does not require this coordination, it expressly permits it.
We use the term "coordination" to indicate that one type of coverage is extended only as excess protection over another type of coverage. The coordinated coverages thus avoid "double recovery." Although the no-fault statute does not define "coordination," we believe this definition is implicit in § 10-4-709(1), C.R.S. 1973. Newton's policy contained the following language on coordination:
"[A]ny amount payable under the Family Protection Coverage (Uninsured Motorist) shall be reduced by the amount of any personal injury protection benefits paid or payable or which would be paid or payable but for the application of a deductible under this or any other automobile insurance policy because of bodily injury sustained by any eligible injured person . . .."
The relationship between mandatory P.I.P. coverage and additional coverage which the insured may choose to purchase is governed by § 10-4-709(1), C.R.S. 1973, of the no-fault statute:
"To avoid duplication of benefits, available through other insurance or contract rights, providers of other benefits under §§ 10-8-116 [group sickness and accident] and XX-XX-XXX [non-profit hospitals], and article 17 of this title [health maintenance organizations], are hereby required to coordinate such benefits with coverages required under § 10-4-106(1)(b), and (1)(c), and all providers of other benefits are expressly authorized to coordinate such benefits with coverages required under this part 7." (emphasis supplied)
Thus, the resolution of this case reduces to the question of whether the term "other benefits" as used in this statute includes benefits paid under uninsured motorist coverage. We hold that it does.
Uninsured motorist coverage cannot be analytically distinguished from a host of other additional coverages. Although all automobile liability insurance issued or delivered in this state must offer uninsured motorist coverage, the insured has the choice of accepting or rejecting the coverage. Section 10-4-319, C.R.S. 1973; Morgan v. Farmers Insurance Exchange, 182 Colo. 201, 511 P.2d 902 (1973). From the insured's point of view, therefore, the uninsured motorist coverage is like any other additional protectionhe can choose to be covered if he is willing to pay the increase in premiums.
Nevertheless, the claimants argue that our decision in Nationwide Mutual Insurance Co. v. Hillyer, 32 Colo.App. 163, 509 P.2d 810 (1973), supports their recovery of duplicative benefits. In Hillyer, we held that an uninsured motorist policy, which purported to provide coverage only in excess of amounts already paid in workmen's compensation, was void in view of the public policy in favor of uninsured motorist coverage. Claimants argue that those same public policy considerations prevent the reduction of uninsured motorist benefits by P.I.P.
However, we believe such an extension of the Hillyer rule in this context was precluded by the Supreme Court's decision in Alliance Mutual Casualty Co. v. Duerson, 184 Colo. 117, 518 P.2d 1177 (1974), rev'g, 32 Colo.App. 157, 510 P.2d 458 (1973). The issue in Alliance was whether a provision extending passenger coverage only as excess insurance over "other similar insurance," could operate to reduce the award when the "other insurance" was uninsured motorist protection. This court had held, pursuant to Hillyer, that such a coordination of benefits violated the public policy behind the uninsured motorist statute. The Supreme Court, in reversing, stated:

*1181 "[W]e will not speculate that the legislature intended to invalidate provisions in an insurance contract designed to limit liability as an excess insurer when there is available to the injured person primary insurance in the required statutory minimum amount.
. . . . .
"[T]he legislative intent is satisfied by coverage which assures that one injured by an uninsured motorist will be compensated at least to the same extent as one injured by a motorist who is insured in compliance with the Motor Vehicle Financial Responsibility Law.
"Adoption of the opposite rule would produce the anomalistic result of double recovery . . . ."
These same considerations apply here. One injured by an uninsured motorist receives the same P.I.P. benefits as one injured by an insured motorist. Claimants argue that they are entitled to even more benefits just because they were injured by an uninsured motorist, and they make this claim in the face of a contractual provision to the contrary. Under these circumstances, the double recovery produced by the rule which claimants advance would be "anomalistic."
Had the General Assembly wished to exclude uninsured motorist coverage from the operation of § 10-4-709, C.R.S. 1973, it could easily have done so. Instead, it made the statute comprehensive by expressly authorizing "all providers of other benefits" to coordinate that additional coverage with the required P.I.P. coverage. Thus, since under Alliance there are no relevant differences between uninsured motorist protection and any other type of additional liability insurance, we hold that the coordination provisions of Newton's policy are enforceable.
Accordingly, the judgment is reversed and the cause remanded with instructions that each claimant's uninsured motorist award be reduced by the amount already paid or to be paid that claimant in P.I.P. benefits.
COYTE and ENOCH, JJ., concur.
NOTES
[1] These P.I.P. benefits for medical expenses and loss of income are required by the no-fault statute in certain minimum amounts. Sections 10-4-705 and 10-4-706, C.R.S. 1973. The uninsured motorist coverage, on the other hand, while it must be offered by the insurer, need not be accepted by the insured. Section 10-4-319, C.R.S. 1973.