### No. C-1568

**Julia Newton, Ethel M. Clark, and Lynn Saunders, as Mother and Next Friend of James Saunders, Jr. v. Nationwide Mutual Fire Insurance Company, an Ohio Corporation**

(594 P.2d 1042)

Decided April 30, 1979.                    Rehearing denied June 4, 1979.

Norton Frickey & Associates, Dan W. Corson; Criswell & Patterson, John Criswell, for petitioners.

Paul D. Renner, P.C., Douglas K. Goss, for respondent.

Erick K. Furedy, for amicus curiae, Steven S. Lovey.

DeMoulin, Anderson, Campbell and Laugesen, Laird Campbell, Richard W. Laugesen, for amicus curiae, State Farm Automobile Insurance Company.

E. Gregory Martin, P.C., E. Gregory Martin, Barre M. Sakol; Feder and Morris, P.C., Harold A. Feder, Irvin M. Kent, for amicus curiae, Colorado Trial Lawyers' Association.

*En Banc.*

MR. JUSTICE CARRIGAN delivered the opinion of the Court.

Nationwide Mutual Fire Insurance Company (Nationwide) sought a

declaratory judgment[1] to determine the validity of its policy provision. This provision allows Nationwide to subtract from amounts payable by it as uninsured motorist coverage any amounts of personal injury protection (PIP) claims arising out of the same collision and required under Colorado Automobile Accident Reparations Act ("No Fault" Act). Section 10-4-701, *et seq.*, C.R.S. 1973. The district court held the policy provision in question void as contrary to public policy. The Colorado Court of Appeals reversed the district court and held the provision valid and enforceable. *Nationwide Mut. Ins. Co. v. Newton,* 40 Colo. App. 425, 579 P.2d 1178 (1978). We granted certiorari to review the court of appeals' opinion and we now reverse that court's decision.

All parties have stipulated to the following facts. Julia Newton, Ethel Clark and James Saunders, Jr., were injured in a March 1975, automobile accident. At that time the car in which they were riding was covered by an auto insurance policy issued to Julia Newton by Nationwide. The policy contained the compulsory personal injury protection coverage mandated by the "No Fault" Act. Section 10-4-701, *et seq.*, C.R.S. 1973. Besides the required coverage it included, for an extra premium, the minimum $15,000 per person and $30,000 per occurrence uninsured motorist coverage which Colorado insurance companies are required to offer their customers. Section 10-4-319, C.R.S. 1973. In addition Nationwide's policy provided:

"In consideration of the coverage afforded under Section I and the adjustment of applicable rates:

"(A) Any amount payable under the Family Protection Coverage (Uninsured Motorist) shall be reduced by the amount of any personal injury protection benefits paid or payable or which would be paid or payable but for the application of a deductible under this or any other automobile insurance policy because of bodily injury sustained by an eligible injured person; . . . ."

The other driver involved in the accident was uninsured. For purposes of this appeal it is agreed that the other driver was solely liable for the collision and resulting injuries.

Nationwide paid the claimants a total of $5,865.05 under the policy's PIP coverage. Pursuant to the policy's terms and conditions, the parties arbitrated the uninsured motorist claims. Those claims included both special damages already paid under the PIP coverage, and general damages. The arbitrators determined that the claimants were entitled to recover a total of $15,250.00 from the uninsured motorist. The arbitrators did not,

---

[1] C.R.C.P. 57.

however, earmark any particular portions of the lump sum award as being for PIP-type losses, such as actual medical expenses, as distinguished from general damages, recoverable under the uninsured motorist coverage, such as pain, suffering, and disability. They expressly found that they had no authority to decide the validity or enforceability of the insurance contract language purporting to allow the company to subtract PIP benefits from uninsured motorist awards.

■ Nationwide brought this action to determine its rights under its policy provision which expressly allows it to offset, against amounts payable under uninsured motorist coverage, any PIP benefits paid, payable, or attributable to a "deductible" amount. The claimants contend that the policy provision in question violates public policy and, therefore, is void. We agree. Because the provision purports to allow an insurance carrier to provide less than the statutorily required minimum coverage of uninsured motorist coverage, it is contrary to the legislative intent to encourage purchase of stated minimum coverages of uninsured motorist insurance. Thus the provision is invalid and unenforceable.

A comparison of PIP coverage and uninsured motorist coverage reveals that the two types of insurance are in many ways quite distinct. Each is set forth in separate contractual provisions and a separate premium is charged and collected for each. Although the law requires that uninsured motorist coverage be offered by every automobile insurance company, insurance purchasers are not required to buy it but may reject it in writing. Section 10-4-319, C.R.S. 1973. PIP coverage, however, is compulsory for every motor vehicle operated on the public highways. Section 10-4-705, C.R.S. 1973.

Uninsured motorist recovery is available only to persons "legally entitled to recover damages from owners or operators of uninsured vehicles . . . ." Section 10-4-319, C.R.S. 1973. Thus a claimant may not obtain payment under uninsured motorist coverage without first establishing that the uninsured motorist's fault, normally negligence, caused the collision. In contrast, PIP benefits are recoverable without regard to fault. Sections 10-4-706 and 707, C.R.S. 1973.

Comparing the benefits payable under PIP with those payable under uninsured motorist coverage demonstrates that the respective coverages overlap to some extent but are not duplicative. The minimum benefits required to be covered by PIP include medical expenses,[2] rehabilitation and occupational training costs,[3] lost wages,[4] and, to some extent, loss of essential services that the injured person would have performed without

---

[2] Up to $25,000 per person performed within three years of the accident. Section 10-4-706(1)(b), C.R.S. 1973.

[3] Up to $25,000 performed within five years of the accident. Section 10-4-706(1)(c), C.R.S. 1973.

[4] Up to $125 per week for 52 weeks. Section 10-4-706(1)(d), C.R.S. 1973.

being paid.[5] In contrast, uninsured motorist coverage compensates for *any loss* arising from bodily injury or death up to the policy limits. Section 10-4-319, C.R.S. 1973. Thus, absent a set-off, under uninsured motorist coverage one can recover losses incurred above the PIP limits for medical expenses, lost wages and lost essential services, plus general damages different in kind from those compensable under the PIP provisions, such as pain and suffering.

In section 10-4-319, C.R.S. 1973, the General Assembly clearly manifested its intent that one who purchases uninsured motorist coverage obtain, for the additional premium paid, coverage for at least the minimum amounts mandated in the statute, $15,000 per person and $30,000 per accident.[6] Nothing in the statute warrants issuing an uninsured motorist policy with lower limits. The set-off provision here involved, however, allows the insurer to reduce the uninsured motorist coverage to less than the statutorily required minimums by deducting the PIP payments.

For example, an insured with $15,000 uninsured motorist coverage who has a total $20,000 loss, of which $15,000 is for PIP-type expenses, will be paid $15,000 under the PIP endorsement of his policy. If that $15,000 is then set off against the minimum required uninsured motorist coverage of $15,000, the insured would receive nothing under his uninsured motorist coverage. He would have to absorb $5,000 of his loss even though he bought and paid for uninsured motorist insurance intended to cover this portion of the loss. In this situation the effect of the set-off provision would be to eliminate completely the insurer's liability under the uninsured motorist provisions if the insured has coverage only for the minimum statutory amounts. Such a set-off clause is repugnant to the state's public policy requiring uninsured motorist coverage to be provided in at least the stated minimum amounts. *In accord, Bacchus v. Farmers Insurance Group Exchange,* 106 Ariz. 280, 475 P.2d 264 (1970); *Heiss v. Aetna Casualty and Surety Co.,* 250 Ark. 474, 465 S.W.2d 699 (1971); *Tuggle v. Government*

---

[5] Up to $15 per day for 52 weeks. Section 10-4-706(1)(d), C.R.S. 1973.

[6] *"Insurance protection against uninsured motorists.* No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in section 42-7-103(2), C.R.S. 1973, under provisions approved by the commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom: except that the coverage required under this section shall not be applicable where any insured named in the policy rejects the coverage and except that, unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to him by the same insurer." Section 10-4-319, C.R.S. 1973.

*Employees Inc. Co.,* 207 So.2d 674 (Fla. 1968); *Peterson v. State Farm Mut. Automobile Ins. Co.,* 238 Or. 106, 393 P.2d 651 (1964); *Sinicropi v. State Farm Ins. Co.,* 391 N.Y.S.2d 444, 55 App.Div.2d 957 (1977); *Aldcroft v. Fidelity and Cas. Co. of New York,* 106 R.I. 311, 259 A.2d 408 (1969); *Westchester Fire Ins. Co. v. Tucker,* 512 S.W.2d 679 (Tex. 1974).

The court of appeals' reliance on this court's decision in *Alliance Mut. Cas. Co. v. Duerson,* 184 Colo. 117, 518 P.2d 1177 (1974), to uphold the policy provision, is misplaced. *Alliance* involved two separate uninsured motorist policies issued by two different carriers. We specifically noted in *Alliance* that upholding the policy provision in issue did not allow an insurance carrier to reduce the total uninsured motorist recovery to less than the minimum amounts required by statute. In contrast, the set-off provision here in issue does allow the insurance carrier to reduce the uninsured motorist coverage available to less than the statutorily required minimum amounts. Thus the reasoning of *Alliance* is inapplicable here.

Moreover, the effect of the set-off clause, if enforced, would be contrary to the legislature's express purpose in enacting section 10-4-319: "to *induce* and *encourage* all motorists to provide for their financial responsibility for the protection of others and to assure the widespread availability to the insuring public of insurance protection against the financial loss caused by negligent financially irresponsible motorists." Section 10-4-320, C.R.S. 1973 (emphasis added).[7]

Further, the reduction of uninsured motorist coverage by PIP amounts paid or payable actually penalizes those who are more seriously injured for as the PIP benefits increase, the amounts recoverable under uninsured motorist coverage decrease. Two insureds may pay the same premium for uninsured motorist coverage in the minimum amounts. The one with PIP-type losses of less than $15,000 may recover some amounts under his uninsured motorist coverage for losses not otherwise covered by PIP, whereas the more seriously injured insured who sustains PIP-type losses in excess of $15,000 would recover nothing under his uninsured motorist policy provisions. Such a result certainly runs counter to the "No

---

[7] A simple example illustrates how the purchase of uninsured motorist coverage actually could be discouraged by the set-off provision in issue: *A* has paid the premium for uninsured motorist coverage in the minimum amount of $15,000 per person and $30,000 per accident. *B* has rejected the coverage offered by the insurer and thus has paid no premium. Both *A* and *B* are involved in an automobile accident with an uninsured motorist who is at fault. *A* and *B* each incurs $60,000 in personal injury damages. Each suffers $15,000 in covered PIP-type losses and each has $45,000 in general damages of a type recoverable, by definition, under uninsured motorist coverage but not under PIP. *A* and *B* will each recover $15,000 under the PIP provisions of their respective policies. If a set-off of the PIP payments is allowed, however, *A* will receive nothing from his uninsured motorist coverage for his general damages. Thus, if *A* is a well-informed consumer, he (or she) would be discouraged from paying the extra premium to purchase uninsured motorist coverage, a result contrary to the express intent of the legislature.

Fault" Act's purpose to provide greater insurance protection for the more seriously injured accident victims while eliminating over-payments to less seriously injured claimants. *See, generally, Keeton and O'Connell, Basic Protection for the Traffic Victim* 2 (1965).

■ Public policy favors protecting consumers by requiring those who sell insurance to disclose fully and fairly to the purchasing public what insurance protection is actually being provided for the premium charged.

We recognize that, generally speaking, the "No Fault" statute does not favor "double recovery" of PIP benefits by the insured. Section 10-4-701, *et seq.; Alliance Mut. Cas. Co. v. Duerson, supra*. However, if the General Assembly in adopting the "no fault" provisions and the uninsured motorist coverage statute had intended to prevent a "double recovery" by an automatic dollar-for-dollar set-off of PIP benefits against amounts payable under uninsured motorist coverage, it would have been simple to expressly so provide. For example, the No-Fault statute clearly states that PIP recovery is to be reduced by workmen's compensation benefits actually provided. Section 10-4-707(5), C.R.S. 1973. No such provision appears with respect to uninsured motorist benefits.[8]

Most jurisdictions which have permitted set-offs of the type proposed here have done so only where the state legislature has explicitly permitted them. *Campbell v. Farmers Ins. Exch.*, 260 Cal.App.2d 105, 67 Cal. Rptr. 175 (1968) (West's Ann. Calif. Ins. Code § 11580.2(e)); *Monaco v. United States Fidelity and Guar. Co.*, 275 Or. 183, 550 P.2d 422 (1976) (Or. Rev. Stat. § 643. 835). *See also Staten v. State Farm Mut. Automobile Ins. Co.*, 579 P.2d 766 (Nev. 1978).

The broadly worded set-off provision here involved is especially unfair, for it allows an uninsured motorist award to be reduced by PIP amounts paid even where there is no showing that double recovery would result without the set-off.

The proper method to preclude the possibility of recovery of PIP-type losses under both PIP and uninsured motorist coverages would be to eliminate PIP paid benefits from the uninsured motorist *claim,* then allow recovery of the uninsured motorist benefits to the extent non-PIP benefits are proved, up to the policy limits. This procedure would preclude actual double recovery of no-fault benefits while allowing the insured the full protection of the uninsured motorist coverage for which he paid a premium. Moreover such a procedure would prevent the insurer from reducing uninsured motorist coverage below the statutory minimums.

---

[8] The different treatment may be explainable by the fact that the employer pays workmen's compensation insurance premiums whereas the same motorist who pays the PIP premium also pays the uninsured motorist premium. It is unlikely that the legislature intended that motorists pay twice for what would be in essence a single coverage. While duplicating benefits is not favored, neither is duplicating premiums.

Since we have held the policy provision invalid and unenforceable, as contrary to public policy, the court of appeals' decision is reversed and the cause is returned to it for remand with directions to reinstate and affirm the decision of the district court.

MR. JUSTICE GROVES dissents.


MR. JUSTICE GROVES dissenting:

I respectfully dissent. I agree with the result reached by the court of appeals.