[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED MARCH 31, 1997
The parties stipulated to the following facts. On March 30, 1990, Anthony Vitti was injured while riding in a vehicle he owned that was operated by Joanne Vitti. The injury resulted from a collision with an automobile owned and operated by Pamela R. Ruokonen, and was caused by her negligence. At the time of the accident, Ruokonen was insured by a vehicular liability insurance policy with coverage of $20,000 and Vitti has recovered this amount from her insurance carrier. At that time, Vitti was covered by a policy issued by the defendant which included uninsured/underinsured motorist (UI/UIM) coverage benefits in the amount of $100,000 for each vehicle. He has two vehicles covered by the policy giving him a combined coverage of $200,000. He is entitled to the $200,000 of UI/UIM less any applicable setoffs allowed by law or the policy. The setoffs include the $20,000 that he received from Ruokonen's insurance policy and $5000 received as basic reparations benefits. On April 1, 1991, Vitti was found to be totally disabled under a social security impairment as provided pursuant to 42 U.S.C. § 423,[1] Between 1991 and June 30, 1996, he has received social security disability benefits (SSDB) in the amount of $63,577.
Vitti contends that SSDB should not be used to reduce the UI/UIM award. He argues that the language of the policy does not provide explicitly for the reduction; that the policy should be construed against Allstate because the language is vague and ambiguous; and that reducing the UI/UIM benefits award by SSDB is void as against public policy. Conversely, Allstate argues that the policy and the pertinent Connecticut regulations allow the UI/UIM benefits to be reduced by SSDB because SSDB law is similar to workers' compensation law.
"An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as CT Page 2619 expressed in the language employed in the policy . . . The policy words must be accorded their natural and ordinary meaning . . . Under well established rules of construction, any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy . . . This rule of construction may not be applied, however, unless the policy terms are indeed ambiguous . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." (Citations omitted; internal quotation marks omitted.) Pacific Indemnity Ins. Co. v.Aetna Casualty Surety Co., 240 Conn. 26, 29-30 (1997).
In the present case, the UI/UIM limitation provision in the contract provides in relevant part that "[t]he limits of this coverage will be reduced by . . . 2. all amounts paid or payable under any workers compensation law, disability benefits law, or similar law." (Allstate insurance policy, Part V, p. 24.) Connecticut's Appellate Courts have not previously addressed whether the phrase "disability benefits law" encompasses SSDB. Therefore, the court seeks guidance in the decisions of other jurisdictions. See Pacific Indemnity Ins. Co. v. Aetna Casualty Surety Co., supra, 30. Two cases seem to be particularly helpful:Barnett v. American Family Mut. Ins. Co., 843 P.2d 1302 (Colo. 1993); and Gentry v. Wise, 537 N.W.2d 732 (Iowa 1995). Although these two courts reached opposite conclusions, each emphasized two elements in reaching their respective decisions: (1) the state's express statutory and regulatory language; and (2) the courts' previous interpretation of the public policy behind the UI/UIM statute.
The facts and insurance policy language in Barnett are similar to those found in the present case. In that case, Barnett was injured by an underinsured motorist and he filed for, and was awarded, SSDB. He settled with the tortfeasor and initiated an UI/UIM claim pursuant to a policy with American. American, however, then instituted a declaratory judgment action to determine whether SSDB may be used to reduce the award of UI/UIM benefits. American argued that the Colorado collateral source statute and the insurance policy permitted it to reduce its UI/UIM liability by the amount that Barnett received in SSDB. Barnett argued, inter alia, that the policy language was void as it contravened public policy. The trial court found in favor of American and the court of appeals affirmed. The Supreme Court reversed noting that the court of appeals' decision was CT Page 2620 predicated upon both a Michigan statute and Michigan case law requiring personal protection insurance benefits to be set off by state and federal governmental benefits. The court emphasized that the Colorado UI/UIM statute does not require insurance benefits to be set off by either federal or state governmental benefits as a general rule. It continued by noting, however, that the Colorado Workers' Compensation Act, § 10-4-707, 4A C.R.S. (1987), expressly provided that an UI/UIM benefits award would be reduced to the extent that benefits are actually available and covered under the workers' compensation act.
Colorado's Supreme Court held that allowing American Family to further reduce Barnett's contract for UI/UIM coverage by the amount of her SSDB would contravene the public policies of providing full recovery within policy limits, and placing an injured party having uninsured motorist coverage in the same position as if the uninsured motorist had been insured. In reaching this conclusion, the court reviewed the legislative history of the UI/UIM statute and concluded that the Colorado legislature has expressed a strong public policy in favor of protecting individuals from financial losses caused by uninsured or underinsured motorists. Barnett v. American Family Mut. Ins.Co., supra, 1303-08.
The court was further persuaded by its prior holding inNewton v. Nationwide Mutual Fire Insurance Co., 197 Colo. 462,594 P.2d 1042 (1979), that it was against public policy to reduce UI/UIM benefits by benefits received under personal injury protection (PIP) coverage. In Newton, the court emphasized that PIP benefits were separate and distinct from UI/UIM benefits, PIP benefits were provided in separate contracts and paid for in separate premiums, and PIP coverage was mandatory. The Newton
court recognized that PIP and UI/UIM may overlap to a certain extent but that to allow an insurer to eliminate its UI/UIM liability would be "repugnant to the state's public policy requiring [UI/UIM] coverage to be provided in at least the stated minimum amounts"; Barnett v. American Family Mut. Ins. Co.,supra, 1307, quoting Newton v. Nationwide Mutual Fire InsuranceCo., supra, 594 P.2d 1044, and would "violate the legislature's express purpose in enacting the [UI/UIM] statute: `to induce andencourage all motorists to provide for their financial responsibility for the protection of others[,] and to assure the widespread availability to the insuring public of insurance protection against the financial loss caused by the negligent financially irresponsible motorists.'" Barnett v. American FamilyCT Page 2621Mut. Ins. Co., supra, 843 P.2d 1307, quoting Newton v. NationwideMutual Fire Insurance Co., supra, 594 P.2d 1045. Furthermore, the Newton court posited that allowing an insurer to reduce its liability by PIP amounts actually penalized those who are more seriously injured because "as the PIP benefits increase, the amount recoverable under the [UI/UIM] coverage decreases."Barnett v. American Family Mut. Ins. Co., supra, 843 P.2d 1307, quoting Newton v. Nationwide Mutual Fire Insurance Co., supra,
594 P.2d 1045 and § 10-4-320, 4 C.R.S. (1973). The Newton
court stated that "as a matter of public policy, insurers should be required to `disclose fairly and fully to the purchasing public what insurance protection is actually being provided for the premium charged.'" Barnett v. American Family Mut. Ins. Co.,supra, 1307, quoting Newton v. Nationwide Mutual Fire InsuranceCo., supra, 1045. Relying on Newton and public policy, theBarnett court concluded that "insurers may not absolve their liability under UI/UIM provisions by reducing the amount of UI/UIM coverage they contracted to provide by payments received for separate and distinct insurance benefits." Barnett v.American Family Mut. Ins. Co., supra, 843 P.2d 1307.
In Gentry v. Wise, supra, 733, the plaintiff was injured by an uninsured motorist and he sought to recover benefits under his policy for uninsured motorists after he was awarded SSDB. The policy contained a limitation similar to the limitation in the present case. The Supreme Court held that an insurance company could reduce its liability for uninsured benefits by SSDB awarded to the Insured.
In holding for the insurer, the court noted that it had previously construed Iowa Code § 516A.2, an uninsured motorist statute, to allow for a valid and enforceable reduction from coverage if two elements are satisfied: "(1) the payment or payments which are the object of the off-set must be insurance or other benefits and (2) the offset must avoid duplication." Gentryv. Wise, supra, 735, quoting McClure v. Employers Mut. Cas. Co.,
238 N.W. 2.d 321, 328 (Iowa, 1976).[2] Applying the first prong of the test, the court concluded that SSDB were insurance benefits within the meaning of the statute for two reasons. First, the court emphasized that SSDB were equivalent to workers' compensation benefits. The court previously had held that workers' compensation benefits were encompassed within the meaning of Iowa Code § 516A.2 because neither purport to compensate the injured person for tort damages but rather provide the injured person with statutory benefits. Second, the court CT Page 2622 concluded that both have a common purpose of providing a claimant compensation when his or her earning capacity has been temporarily or permanently impaired. The court then summarily concluded that SSDB would be duplicative of UI/UIM motorist benefits to the extent that the benefits provided compensation for the same injuries. The court emphasized that the limitation is valid only to the extent that Gentry's disability benefits were attributable to the automobile accident because deduction of those benefits will avoid duplication.
The court was also persuaded that inclusion of SSDB was correct due to the fact that the court has traditionally taken a narrow coverage view, subtracting from the policy limit any recovery from other sources, in the uninsured motorist coverage area. This narrow approach is based on a policy viewpoint that the role of the uninsurance coverage is to provide protection up to the minimum statutory limit which the claimant would have received had the claimant been injured by an insured motorist.Gentry v. Wise, supra, 737. The court concluded that denying coverage was appropriate as long as the plaintiff can recover the statutory minimum. In arriving at this determination, the court specifically rejected Barnett because it involved an underinsurance claim; Colorado did not have a statute comparable to Iowa's; and the Colorado legislature specifically intended to provide coverage to the fullest extent of the policy limits.
In Connecticut, an insurer may not, by contract, reduce its liability for such uninsured or underinsured motorist coverage except as § 38-175a-6 (now 38a-334-6) of the Regulations of Connecticut State Agencies expressly authorizes. (Internal quotation marks omitted.) Allstate Ins. Co. v. Lenda,34 Conn. App. 444, 454, 642 A.2d 22, cert. denied, 231 Conn. 906,648 A.2d 149 (1994). The Insurance Commissioner, pursuant to §38a-334,[3] has authorized that insurance companies may limit their liability under UI/UIM provisions' to the extent that damages have been . . . (2) "paid or payable under workers' compensation or disability benefits law . . ." Regs., Conn. State Agencies § 38a-334-6 (d)(2). In the present case, Allstate's policy parallels the regulation except Allstate's policy language contains the additional phrase "or similar law." The phrase "or similar law" violates the regulations to the extent that it is an attempt on Allstate's part to further reduce UI/UIM liability beyond the authorized limits. Allstate Ins. Co. v. Lenda, supra.
The overriding purpose of UI/UIM coverage in Connecticut is CT Page 2623 remedial in nature. Harvey v. Travelers Indemnity Co.,188 Conn. 245, 248-50 (1982). "The public policy embodied in [UI/UIM] legislation favors indemnification of accident victims unless they are responsible for the accident." (Citations omitted; internal quotation marks omitted.) Keystone Insurance Co. v.Raffile, 225 Conn. 223, 233 (1993). It is accepted that "[t]he legislative intent behind the underinsured motorist statute has been defined repeatedly as to assure that every insured recovers damages he or she would have been able to recover if the uninsured [or underinsured] motorist had maintained a policy of liability insurance." (Citations omitted; internal quotation marks omitted.) United States Fidelity Guaranty Co. v.Pitruzzello, 35 Conn. App. 638, 644-45 (1994). The public policy behind § 38a-336 is to ensure that a party injured by an UI/UIM be able to recover for his injuries as if the UI/UIM were adequately covered to the fullest extent of the UI/UIM coverage less any setoffs or reduction authorized by statute. AmericanMotorists Ins. Co. v. Gould, 213 Conn. 625. 631-32 (1990), overruled in part on other grounds, Covenant Ins. Co. v. Coon,220 Conn. 30, 37 (1991). The legislative intent and the public policy behind the UI/UIM statute is to maximize a plaintiff's recovery for UI/UIM coverage.
The court is satisfied that the reasoning and the outcome ofBarnett is more persuasive than Gentry in analyzing the present case for several reasons. First, Connecticut's statutory provisions are more analogous to Colorado's statute than to Iowa's statute; second, Colorado's public policy is similar to Connecticut's; and third, the comparison drawn between PIP and UI/UIM benefits is instructive because, like the plaintiff inNewton, Vitti is also required to contribute funds for two distinct types of insurance coverage.
Although Iowa and Colorado allow an insurance company to limit its UI/UIM liability within the confines of the relevant statutes. Iowa's statute sweeps broadly allowing a reduction for "insurance or other benefits"; Gentry v. Wise, supra, 735; while Colorado allows a reduction only for workers' compensation benefits. Barnett v. American Family Mut. Ins. Co., supra, 1304. The Connecticut regulations do permit more reductions than Colorado's statute, however, those regulations do not reach as far as Iowa's statutory scheme because Connecticut's regulations limit the reduction to workers' compensation and disability law while the Iowa statute broadly includes any other benefit. It thus became evident that Connecticut's statutory and regulatory CT Page 2624 scheme is more similar to Colorado's.
Barnett is more persuasive than Gentry because the purpose and policy of the UI/UIM provision in Colorado and Connecticut are the same. Each of the legislatures intended to provide broad coverage for a person injured by an UI/UIM. Finally, Vitti, similar to the plaintiff in Newton, was required by law to pay premiums for two types of coverage: UI/UIM and social security.Newton and Barnett stand for the proposition that it would be inequitable to allow an insurer to reduce or eliminate its obligation to pay contractual benefits based on an insured's ability to collect from another source to which he was statutorily required to contribute. As a matter of public policy, insurers should be required to disclose fully and fairly to the purchasing public what insurance protection is actually being provided for the premium charged. Barnett v. American Family Mut.Ins. Co., supra, 1307.
Gentry overemphasizes the fact that both workers' compensation and SSDB are awarded pursuant to a statutory scheme without examining the purposes of the two schemes. In Connecticut, the stated purpose of "the workers' compensation law has always been to provide compensation for an injury arising out of and in the course of employment . . ." Plainville v. TravelersIndemnity Co., 178 Conn. 664, 669 (1979). "The purpose of the Social Security Act is to ameliorate some of the rigors of life for those who are disabled or impoverished." (Internal quotation marks omitted.) Baughman v. Sullivan, 743 F. Sup. 761, 762 (D.Kan. 1990). `The primary objective of the disability provisions of the social security system is to provide workers and their families with basic protection against hardship created by loss of earning due to illness or old age. . . . The disability insurance program, like the other insurance aspects of the Social Security Act, is contributory in nature, and is designed to prevent public dependency by protecting workers and their families against common economic hazards, wholly without regard to the need of the recipient." (Citation omitted; internal quotation marks omitted.)Sciarotta v. Bowen, 735 F. Sup. 148, 151 (1989). "A social security disability benefit is a source of income designed to provide periodic sums from which the recipient can expend funds necessary for his own support or the support of his dependents."Russo v. Russo, 1 Conn. App. 604, 608 (1984).
To reiterate, the cases reveal that workers' compensation law is designed to provide compensation for an injury suffered while CT Page 2625 at work. In contrast, SSDB payments are designed to protect against the hardship of life, ameliorate life's rigors and provide the recipient with broad remedial support. The purpose of SSDB is to provide broad protection and support to the recipient beyond mere compensation for a work related injury.[4] The purpose of SSDB law is not similar to the purpose of workers' compensation law and that the similarity drawn between the two byGentry is not persuasive.
Moreover, the court in Gentry emphasized that Gentry would receive duplicative benefits if the insurance company was not permitted to reduce the award to him. "It is a time-honored rule that an injured party is entitled to full recovery only once for the harm suffered . . . An insured may not recover double payment of damages under overlapping insurance coverage." (Citations omitted; internal quotation marks omitted.) Buell v. AmericanUniversal Ins. Co., 224 Conn. 766, 775 (1993). Vitti will not receive a full recovery even if Allstate is not permitted to reduce its liability by the SSDB.[5]
To reiterate, the court finds the Barnett reasoning to be more persuasive in analyzing the present case and that Allstate should not be permitted to limit its UI/UIM liability by the amount of SSDB awarded to Vitti. An order may enter declining to reduce the UI/UIM benefit by the amount of SSDB received.
MORAGHAN, J.