JUSTICE EID
delivered the Opinion of the Court.
¶1 Petitioner Arnold Calderon sustained injuries in a motor vehicle accident with an uninsured motorist. At the time of the accident, Calderon was insured under policies issued by respondent American Family Mutual Insurance Company (“American Family”) providing a total of $300,000 in uninsured/underinsured motorist (“UM/UIM”) coverage and $5,000 in medical payments (“MedPay”) coverage. Following the accident, American Family paid the $5,000 Med-Pay policy limits directly to Calderon’s medical providers. Calderon also made a claim for UM/UIM benefits, but American Family disputed the extent of his damages. Calderon sued for breach of contract, and the jury returned an award of $68,338.97 in his favor. However, the trial court reduced the jury award by $5,000 to set off the MedPay benefits Calderon had already received. ’
¶2 Calderon appealed the order reducing his judgment, and the court of appeals affirmed, Calderon v. Am. Family Mut. Ins. Co., 2014 COA 70, ¶ 3, — P.3d —, holding that the setoff of MedPay coverage was not barred by the UM/UIM setoff prohibition, which provides: “The amount of the [UM/UIM] coverage available pursuant to this section shall not be reduced by a setoff from any other coverage, including, but not limited to, ... [MedPay] coverage....” § 10-4-609(l)(c), C.R.S. (2016). The court in *677 terpreted “[t]he amount of the [UM/UIM] coverage available” as referring to the amount available under the policy in the abstract—that is, the UM/UIM coverage limit. See Calderon, ¶ 2. Under such an interpretation, an insurer may reduce the payment due under the insured’s UM/UIM coverage by amounts paid pursuant to the insured’s Med-Pay coverage as long as the UM/UIM coverage limit (here $300,000) is not reduced. Id. at ¶¶ 2-3.
¶3 We granted certiorari and now reverse.[1] We hold that “[t]he amount of the [UM/UIM] coverage available pursuant to this section” refers not to the coverage limit but rather to the amount of UM/UIM coverage available on a particular claim (here, $68,338.97). Accordingly, we reverse the court of appeals and remand the case for further proceedings consistent with this opinion.
I.
¶4 The material facts in this case are not in dispute. On August 22, 2010, an uninsured driver ran a stop sign and collided with a vehicle driven by Calderon. Calderon sustained injuries that left him unable to work for over a month. At the time of the accident, Calderon was insured under American Family policies providing $300,000 in UM/UIM coverage and $5,000 in MedPay coverage, for which Calderon paid separate premiums. The UM/UIM policy endorsement provided in part that
No one will be entitled to receive duplicate payments for the same elements of loss. Any amount we. pay under this Part to or for an insured person will be reduced by any payment made to that person under any other Part of this policy. In no event shall a coverage limit be reduced below any amount required by law.
Following the accident, Calderon made claims for MedPay and UM/UIM benefits. American Family paid the $5,000 policy limits of- Calderon’s MedPay coverage to his medical providers, but disputed the amount due under Calderon’s UM/UIM coverage..
¶5 Calderon filed suit asserting breach of contract, common law bad faith, and statutory bad faith under sections 10-3-1115 and - 1116, C.R.S. (2016). The trial court bifurcated the contract claim from the issue of bad faith, and the contract claim was tried to a jury oh December 17 and 18,2012. The jury returned a verdict of $68,338.97 in Calderon’s favor, including $34,394.65 for past medical expenses. The trial court reduced the award by the $5,000 American Family had previously paid under Calderon’s MedPay coverage, and entered judgment against American Family for. $77,459, which included prejudgment in7 terest. American Family paid the judgment. The trial court then entered summary judgment for American Family on Calderon’s bad faith claims.
¶6 Calderon appealed the order reducing his judgment, and. the court of appeals affirmed. Calderon, ¶ 3. The court interpreted the language of the setoff prohibition barring a reduction of “[t]he amount of the [UM/UIM] coverage available” as referring to the amount available under the policy in the abstract—that is, the UM/UIM coverage limit. See id. at ¶ 2. The court reasoned that, because.an insurer may reduce the payment due under the insured’s UM/UIM coverage by amounts paid pursuant to the insured’s MedPay coverage as long as the UM/UIM coverage limit (here, $300,000) is not reduced, the setoff here was permissible. Id. at ¶¶ 2-3. According to the court, Calderon’s argument to the contrary “incorrectly equatefd] the term ‘coverage’ with the term ‘benefit,’ ” and improperly permitted “double recovery.” Id. at ¶¶ 12, 16-18, 25-26. We granted certiorari and now reverse.
II.
¶7 Calderon argues that the setoff of the $5,000 in MedPay coverage in this case is *678 contrary to section 10-4-609(l)(c), C.R.S. (2016), which, as amended in 2007, provides: “The amount of the [UM/UIM] coverage available pursuant to this section shall not be reduced by a setoff from any other coverage, including, but not limited to, legal liability insurance, medical payments coverage, health insurance, or other uninsured or un-derinsured motor vehicle insurance.” We agree that the setoff prohibition of section 10-4-609(l)(c) bars the setoff of MedPay coverage in this ease, and accordingly reverse the court of appeals.
¶8 Echoing the court of appeals, American Family argues that the setoff prohibition bars only those setoffs that would reduce the coverage limit of a particular policy. It reads the first portion of the statutory language— namely, “The amount of the [UM/UIM] coverage available pursuant to this section”—as referring to the amount of coverage available in a particular policy in the abstract, or the coverage limit (here, $300,000). By contrast, Calderon reads the same statutory language as referring to the amount of coverage available under a particular claim (here, $68,338.97).
¶9 The question, then, is whether the “amount of the [UM/UIM] coverage available pursuant to this section” refers to the amount available under the policy in the abstract, or in a particular case. When read in isolation, the phrase might be read either way. However, we adopt the latter construction because it makes sense of the entirety of the provision at issue here. See In re Marriage of Ikeler, 161 P.Sd 663, 666-67 (Colo. 2007) (“[A] statute must be read and considered as a whole.”).
¶10 The second phrase of the prohibition provides that the amount of UM/UIM coverage available “shall not be reduced by a setoff from any other coverage, including, but not limited to, ... medical payments coverage.” § 10-4-609(l)(c) (emphasis added). This portion of the provision refers to a setoff of the amount actually paid pursuant to a particular coverage, not simply the coverage limit. This is true because a “setoff from any other coverage” is a particular amount paid pursuant to that coverage. See Setoff, Black’s Law Dictionary (10th ed. 2014) (defining “setoff’ as the “right to reduce the amount of a debt by any sum the creditor owes the debtor”). The language covers all setoffs, not just those where coverage limits have been reached. Indeed, it would make little sense to prohibit a setoff only for the coverage limit of other types of insurance that the claimant might hold—for example, “legal liability insurance, ... health insurance, or other uninsured or underin-sured motor vehicle insurance,” § 10-4-609(l)(c)—because the coverage limit of those insurance policies would not generally be known, just the amount paid pursuant to the coverage. In sum, reading the first phrase in light of the second, we conclude that section 10-4-609(l)(c) bars the setoff of MedPay payments from the amount actually paid pursuant to UM/UIM coverage.
¶11 This construction is consistent with our observation that UM/UIM insurance is designed to put “an injured party having uninsured motorist coverage in the same position as if the uninsured motorist had been insured.” Barnett v. Am. Family Mut. Ins. Co., 843 P.2d 1302, 1308 (Colo. 1993) (quoting Krai v. Am. Hardware Mut. Ins. Co., 784 P.2d 769, 764 (Colo. 1989)); see also USAA v. Parker, 200 P.3d 350, 358-59 (Colo. 2009) (same); § 42-7-102, C.R.S. (2016) (under UM/UIM coverage, “insurance benefits have been paid for by either the negligent driver or the innocent victim for the purpose of compensating the innocent victim for injuries or losses”). Here, no one disputes that had Calderon been injured in an accident caused by an insured driver, he would have received benefits from American Family pursuant to his MedPay coverage, as well as medical expenses from the other driver’s insurance company. In other words, under the construction advocated by American Family, Calderon would receive $5,000 less in compensation because he was injured by an uninsured or underinsured driver. We see no indication from the language of the setoff prohibition that the legislature intended such disparate treatment.
¶12 The court of appeals rejected the construction we adopt today for two reasons, neither of which we find persuasive. First, it concluded that such a construction confused *679 the term “coverage” with the term “benefit.” Calderon, ¶¶ 16-18. We agree with the court of appeals that there is a distinction between the two terms—coverage refers to the type of insurance, and benefit refers to the amount paid out pursuant to that coverage, id.—but disagree that the construction we adopt today confuses the two terms. The setoff prohibition does not use the term “coverage” in isolation. Rather, it refers to “[t]he amount of the [UM/UIM] coverage available pursuant to this section” and the fact that such amount cannot be reduced “by a setoff from any other coverage.” § 10-4-609(l)(e). Under the construction we adopt today, both uses of the term “coverage” refer to the type of insurance. As noted above, the question is whether the reference point for the “amount ... available” and “setoff from” that type of insurance is in the abstract or in a particular ease. We believe it is the latter. ,
¶13 The court of appeals also expressed concern about preventing double recovery. Calderon, ¶¶ 12, 25-26. But there is no double recovery problem here. Rather, as this court has recognized, benefits received under separate coverages can substantially overlap without constituting a double recovery. For example, in Newton, we observed that while personal injury protection (“PIP”) and UM/ UIM coverage substantially overlapped—the former covered medical expenses, rehabilitation and occupational training costs, lost wages, and, to a certain extent, loss of essential services, and the latter covered any loss stemming from bodily injury or death up to policy limits—the coverage was not duplica-tive. Newton v. Nationwide Mut. Fire Ins. Co., 197 Colo. 462, 594 P.2d 1042, 1043-44 (1979) (holding that a setoff of PIP benefits from UM/UIM coverage violated public policy). Similarly, in Barnett, we concluded that Social Security Disability Insurance (“SSDI”) benefits and UM/UIM benefits overlap but are not duplicative, as the former is designed to compensate for a loss" of income, whereas the latter, again, covers any loss. 843 P.2d at 1309 (holding that a setoff for SSDI benefits from UM/UIM coverage violated public policy). We affirmed the holding of Newton that “an overlap of benefits is distinguishable from double recovery.” Id. at 1308 (citing Newton, 594 P.2d at 1043-44).
1Í14 Like the PIP benefits at issue in Newton and the SSDI benefits at issue in Barnett, Calderon’s MedPay and UM/UIM benefits overlap but are not duplicative. MedPay coverage pays for reasonable medical expenses regardless of fault. § 10-4-636(4)(a), C.R.S. (2016). UM/UIM coverage, in contrast, compensates an insured for “loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle.” § 10-4-609(l)(a). Calderon’s MedPay coverage thus provided something his UM/UIM coverage did not— namely, the quick reimbursement of medical expenses even where he was at fault. It therefore provides overlapping, but not dupli-cative, coverage.
¶15 Moreover, while double recovery is disfavored, so is payment of duplicative premiums. Like the insured in Newton, 594 P.2d at 1043, Calderon paid separate premiums for the two types of coverage at issue here. As this court observed in Newton, “[i]t is unlikely that the legislature intended that motorists pay twice for what would be in essence a single coverage [were a setoff permitted]. While duplicating benefits is not favored, neither is duplicating premiums.” Id. at 1045 n.8. Indeed, in Barnett, this court expressed.concern that the insurer stood to receive a windfall by collecting two premiums for one coverage. 843 P.2d at 1307 (“Allowing American Family to receive such a windfall at the expense of Barnett undermines the purpose of UM/UIM coverage.”). Permitting an insured who purchased both UM/UIM and MedPay coverage to recover benefits equal to those obtainable for injury caused by an adequately insured motorist simply guarantees that insureds like Calderon get what they paid for.
¶16 To the extent that Calderon’s insurance purports to allow the setoff in this case, it is contrary to the setoff pi'ohibition of section l(M-609(l)(c) and is unenforceable. See State Farm Mut. Auto. Ins. Co. v. Kastner, 77 P.3d 1256, 1260 (Colo. 2003) (citing Peterman v. State Farm Mut. Auto. Ins. Co., 961 P.2d 487, 492 (Colo. 1998)) (“Should the contract fail to conform to any statute, it is *680 unenforceable to that extent.”). Because we hold that the setoff prohibition of section 10-4-609(l)(c) bars the setoff of Calderon’s Med-Pay coverage, we do not address Calderon’s alternative-arguments against the setoff.
III.
¶17 We hold that the setoff of MedPay benefits in this case is barred by the setoff prohibition of section 10—4—609(l)(c). We therefore reverse and remand the case for further proceedings consistent with this opinion.
JUSTICE GABRIEL dissents, and JUSTICE MÁRQUEZ and JUSTICE HOOD join in the dissent.

. We granted certiorari to review the following issues:
1. Whether the statutory structure governing automobile insurance permits an insurer to reduce its payment to an insured for an Uninsured/Underinsured (“UM/UIM") claim by the payments it already made to the insured under the insured’s Medical .Payments ("MedPay”) coverage.
2. Whether the collateral source rule prohibits a setoff of the amount of the coverage available under UM/UIM coverage by Med-Pay coverage. • - .-