**Don McLAUGHLIN, Plaintiff-Appellant,**

v.

**James ALLEN and Professional Rodeo Cowboys Association, Inc., Defendants-Appellees.**

No. 83CA0662.

Colorado Court of Appeals, Div. I.

Sept. 20, 1984.

Kochenburger & Smith, J. Creig Coogan, Fort Collins, for plaintiff-appellant.

Holland & Hart, John D. Coombe, Jeffrey T. Johnson, Denver, for defendants-appellees.

PIERCE, Judge.

Plaintiff appeals a summary judgment granted in favor of defendants. We affirm.

Plaintiff is a professional rodeo champion cowboy and a member of the defendant association. The Professional Rodeo Cowboys Association (PRCA) is a promotional organization which, among other activities, sanctions rodeo events. James Allen is a member of the Board of Directors of PRCA.

This action involves a PRCA-sanctioned rodeo held in Pendleton, Oregon, and the method by which plaintiff was assigned his performance date, time, and position for the steer roping event. Under normal circumstances, steer roping contestants send their entry forms to an agency of PRCA, PROCOM, which in turn assigns performance sequences randomly by computer. Ropers can be assigned to perform either "in the slack," *i.e.*, not before the paying audience; or before the audience, or in a combination of both. "Slack" performances are held either before or after the actual rodeo. Many ropers consider "slack" performances more desirable as horses and contestants tend to perform better when there is little or no crowd noise.

Aside from random assignments, the PRCA rules allow rodeos to choose an assignment procedure whereby certain expert ropers are required to perform for the paying audience. This procedure, called the "feature system," tends to increase ticket sales by headlining the names of the more renowned experts.

The PRCA rulebook contains, in pertinent part, the following language on the feature system:

"27. *The feature system may be utilized if applied for and listed in PRO-RODEO SPORTS NEWS.* Notification of which contestants a committee wishes to *feature* must be made to the Central Entry Office by the committee prior to entry closing time. Once *features* are accepted and position draw is finalized by the Central Entry Office, no change may be made ....

"A. Rodeos that have been approved to utilize the feature system may *feature* contestants without contestants' consent, unless otherwise approved by an event director, providing the run on the timed event cattle is not altered and riding event stock is moved with the *featured* contestant after the draw is made ....

"[D]irectors may set contestants at their discretion at any rodeo whether or not that rodeo was approved as a *feature* rodeo.

"C. In steer roping, rodeo committees shall be allowed to *place* contestants so they may appear before the paying spectator, *placing* of contestants to be done before drawing stock competed on and subject to the approval of directors in that specific event. After *placing* contestant once, he shall stay in that position.

"D. The following guidelines will be used in featuring contestants: ...." (emphasis added)

At the time plaintiff entered the Pendleton rodeo, no notice of the feature system had been given. At no time was notice published in the Prorodeo Sports News. By random draw, plaintiff was assigned two slack performance times. Sometime thereafter, James Allen contacted the Pendleton Rodeo Committee to discuss the assignment procedure. Allen suggested that in response to then recent opposition to steer roping by humane societies, it would be desirable to require some experts to perform for the full audience. By virtue of their expertise, it was thought that fewer injuries would occur before the public.

After some discussion, the Pendleton Committee decided to change the assignment process. Approximately two weeks prior to the rodeo, plaintiff telephoned PROCOM and was informed that he was one of the ropers to be required to perform for the patrons. Plaintiff initially declined to participate, but did perform "under protest." He did not perform well in the final round in which he was required to perform

before the audience and finished "out of the money."

Plaintiff brought suit alleging that an implied contract existed between PRCA and its members to recognize and follow the Association rules. Asserting that PRCA had not complied with the feature system rule, plaintiff sought compensatory and exemplary damages premised on claims of breach of contract, promissory estoppel, fraud, and equitable estoppel.

After deposing plaintiff and Allen, defendants moved for summary judgment on the ground that the "feature system" was not applicable to steer roping events. Various affidavits of PRCA officials were submitted which stated that only the "placement system" was used in steer roping. Placing, while essentially the same idea as featuring, was claimed to have pre-dated the feature system, the former never being subject to published notice. The feature system is claimed to have been implemented for other rodeo events and is no longer employed. Notice was only required because featuring was new and provided a means of informing the PRCA members of the change in procedure.

Plaintiff submitted a brief in opposition, but did not offer any counter-affidavits. The trial court granted the motion for summary judgment. It determined that because the Pendleton committee made the ultimate decision of the procedure to be used for assigning ropers, and also bore the responsibility for publishing notice, the claims of breach of contract and promissory estoppel were inapplicable to Allen and PRCA. The remaining claims were dismissed when, after considering the depositions and affidavits, the court found insufficient evidence to support them.

On appeal, plaintiff asserts that summary judgment was inappropriate because each claim for relief involves disputed issues of fact. We agree with the trial court that no genuine issues of material fact remain, but reach our conclusion in a different manner.

C.R.C.P. 56(e) provides that when a motion for summary judgment is submitted and supported by affidavits, an adverse party may not rest upon the mere allegations of his pleadings, but must, by affidavit or otherwise, set forth specific facts showing that there is a genuine issue for trial. If he does not respond, summary judgment, if appropriate, shall be entered against him. *Durnford v. City of Thornton*, 29 Colo.App. 349, 483 P.2d 977 (1971).

Here, the only sworn testimony before the court was the affidavits and depositions. In his deposition, plaintiff admitted that he had no knowledge of the history of the feature system as he had primarily been a calf roper and had only been participating in steer roping a short time. No other testimony to rebut defendants' assertions was proffered. Plaintiff argues, however, that the affidavits of PRCA officials were inadmissible parol evidence to the PRCA rules because of the trial court's holding that PRCA Rule 27 was unambiguous. We disagree with the trial court's holding that the Rule was unambiguous.

■ The determination of whether a document is ambiguous is a question of law for the court. *Niles v. Builders Service Supply, Inc.*, 667 P.2d 770 (Colo.App.1983). Here, an ambiguity results from the change in terminology alone. After referring to the feature system for three paragraphs, Rule 27 suddenly uses the term "place" with regard to steer roping. And, defendants' explanation for this variation is consistent with the manner in which the Rule is set out. Additionally, where a written instrument contains words or expressions which are of a technical nature, or words used in a particular trade or business that are unintelligible to the common reader and susceptible of different interpretation, parol evidence is admissible for the purpose of explaining the language used and thus effectuating the intention of the parties through the medium of their own language. *See Mobile Housing Environments v. Barton and Barton*, 432 F.Supp. 1343 (D.Colo.1977). Thus, the affidavits of the PRCA officials were properly considered.

**1172**

Upon submission of these affidavits, it became incumbent upon plaintiff to present some evidence that there was a genuine issue regarding whether the "feature system" was indeed the subject of the controversy. As no such evidence was presented, summary judgment was proper. *See Durnford v. City of Thornton, supra.*

Judgment affirmed.

SMITH and BABCOCK, JJ., concur.