PERKINS v RIVERSIDE INSURANCE COMPANY OF AMERICA

RIVERSIDE INSURANCE COMPANY OF AMERICA v PERKINS

Docket Nos. 71702, 71703. Submitted November 7, 1984, at Lansing.— Decided March 18, 1985. Leave to appeal applied for.

David N. Perkins was fatally injured in an automobile accident. His widow, Nadine Perkins, brought an action in Ingham Circuit Court on her own behalf and as guardian of their minor child, Kuhn C. Perkins, against Riverside Insurance Company of America (now Transamerica Insurance Coproration of America) seeking no-fault survivors loss benefits. Riverside Insurance Company brought an action in Kent Circuit Court, naming as defendants Nadine and Kuhn Perkins and Janet L. Perkins, the decedent's former wife, and her minor children from the marriage, Daniel and Coreen Perkins. The cases were consolidated in Ingham Circuit Court, and that court, Jack W. Warren, J., granted a summary judgment disposing of all claims and determining the amount to be set off against the no-fault benefits and awarding interest to the plaintiffs, Nadine and Kuhn Perkins. Specifically, the trial court held that the deceased's Michigan State Police pension benefits, which became payable to his widow upon his death, were not to be set off against the no-fault survivors benefits she received. Defendant insurer appealed, alleging that the pension benefits should be set off, and that the trial court erred in computing the no-fault benefits due the surviving dependents and in awarding both prejudgment interest and interest on overdue payments. *Held:*

1. The test for determination of whether a governmental benefit is to be set off against no-fault benefits is two-fold: (1)

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 7 Am Jur 2d, Automobile Insurance § 368.

Validity and construction of no-fault insurance plans providing for reduction of benefits otherwise payable by amounts receivable from independent collateral sources. 10 ALR4th 996.

[2, 3] 7 Am Jur 2d, Automobile Insurance § 363.

Entitlement of child, spouse, parent, or other person to survivor's loss benefit under no-fault insurance acts. 12 ALR4th 975.

[4] 7 Am Jur 2d, Automobile Insurance § 357.

Automobile insurer's liability for statutory excess interest for delayed payment of no-fault claim. 14 ALR4th 761.

does the governmental benefit substantially serve the same purpose as the no-fault benefit, and (2) is the governmental benefit payable as the result of the same accident. If both prerequisites are satisfied, a setoff is required. The no-fault survivors benefits are designed to replace the loss of a decedent's income. The State Police pension is intended to protect the decedent's retirement contributions and not to replace his wages. Thus, the pension benefits do not duplicate no-fault survivors loss benefits, and the no-fault benefits should not be reduced by the amount of the pension benefits.

2. The trial court determined the amount of no-fault benefits due by first computing the benefit for each claimant and then reducing each separate award by the amount of governmental benefits (social security survivors benefits) payable to that claimant. This was a proper method of computation in a case in which the insured's dependents comprised more than one household.

3. The trial court properly awarded both prejudgment interest and interest on overdue payments.

Affirmed.

1. INSURANCE — NO-FAULT INSURANCE — GOVERNMENTAL BENEFITS.

The test for determining whether no-fault automobile insurance benefits must be reduced by the amount of a governmental benefit, where the claimant is entitled to that benefit under federal or state law, is two-fold: (1) does the governmental benefit substantially serve the same purpose as the no-fault benefits, and (2) is the governmental benefit payable as a result of the same accident; if both prerequisites are met, setoff is required (MCL 500.3109[1]; MSA 24.13109[1]).

2. INSURANCE — NO-FAULT INSURANCE — PENSIONS — STATE POLICE PENSIONS.

A Michigan State Police pension payable to an officer's surviving spouse upon his death does not duplicate no-fault survivors loss benefits; it is intended to protect the decedent's retirement contributions and is not intended to replace the decedent's wages, as are no-fault survivors loss benefits; therefore, the pension benefits are not to be set off against the amount of no-fault survivors loss benefits (MCL 28.107[4], 500.3109[1]; MSA 3.337[4], 24.13109[1]).

3. INSURANCE — NO-FAULT INSURANCE — GOVERNMENTAL BENEFITS.

No-fault insurance survivors loss benefits which are subject to a setoff of governmental benefits, in a case where the insured's dependents comprise more than one household, may be calcu-

lated by determining each dependent's share of the no-fault benefits and then subtracting each dependent's governmental benefit, rather than subtracting the sum of all governmental benefits from the sum of all no-fault benefits and distributing the result.

4. INSURANCE — NO-FAULT INSURANCE — INTEREST.

A court may properly order payment of both prejudgment interest and interest on overdue payments on an award of no-fault personal protection benefits (MCL 500.3142, 600.6013; MSA 24.13142, 27A.6013).

*Sinas, Dramis, Brake, Boughton, McIntyre & Reisig, P.C.* (by *George T. Sinas*), for plaintiffs.

*Dilley, Dewey & Waddell, P.C.* (by *Jonathan S. Damon*), for defendant.

Before: M. J. KELLY, P.J., and BEASLEY and M. R. STEMPIEN,* JJ.

M. J. KELLY, P.J. These cases involve the distribution of no-fault survivors loss benefits under a policy insuring David Norman Perkins, who was fatally injured in an automobile accident on January 25, 1981. The deceased left a modern domestic entanglement. On May 13, 1981, Nadine Perkins filed suit in Ingham County Circuit Court both on her own behalf and as guardian of her minor son, Kuhn C. Perkins, seeking benefits, interest and attorney fees from the defendant-insurer, Riverside Insurance Company (now Transamerica Insurance Corporation of America). Unaware of this action, defendant filed suit six days later in Kent County Circuit Court, interpleading plaintiffs and Janet Louis Perkins, as guardian of her children, Daniel and Coreen.[1] Following consolidation of the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Daniel and Coreen Perkins are not parties to the instant appeal. Use of the term plaintiffs throughout this opinion refers to Nadine and Kuhn Perkins only.

cases in Ingham County Circuit Court, plaintiffs and defendant filed motions for summary judgment under GCR 1963, 117.2(3) and all claims were disposed of by an order of summary judgment dated May 19, 1983. Defendant appeals from the order, challenging the trial court's determination of the amount to be set off against the no-fault benefits as well as the trial court's award of interest. Plaintiffs have not filed a cross-appeal. We affirm.

The follwoing facts were stipulated to by all parties, including Daniel and Coreen Perkins. David Norman Perkins was killed in an automobile accident that occurred on January 25, 1981. The accident did not occur in the course of his employment. Prior to the accident, he was married to and living with Nadine Perkins, with whom he had one minor child, Kuhn Perkins. The decedent had previously married and divorced Janet Louise Perkins, with whom he had two minor children, Daniel and Coreen. As a result of the divorce judgment, decedent was required to pay child support for Daniel and Coreen in the amount of $35 per child per week, or $151.66 per child per month.

The decedent was insured under a no-fault insurance policy with defendant which, as a result of his death, provided survivors loss benefits in the amount of $1,870 per 30-day period. Because the decedent had also been employed by the Michigan Department of State Police as a state trooper for approximately 13 years, he was covered under the Department of Public Safety pension, accident and disability fund act, MCL 28.101 *et seq.;* MSA 3.331 *et seq.* Upon his death, Nadine Perkins began receiving a monthly pension of $483.60. Also as a result of his death, Nadine, Kuhn, Daniel and Coreen each began receiving $153 per month in social security survivors benefits.

Defendant does not dispute its liability for no-fault benefits. Defendant does, however, contend that the no-fault benefits should be reduced by the amount of the pension recieved by Nadine Perkins. The trial court rejected defendant's position as do we.

Section 3109(1) of the no-fault act provides:

"Benefits provided or required to be provided under the laws of any state or the federal government shall be subtracted from the personal protection insurance benefits otherwise payable for the injury." MCL 500.3109(1); MSA 24.13109(1).

The intent of the Legislature in enacting § 3109(1) was to "reduce or contain the cost of basic insurance" by eliminating duplication of certain benefits. *O'Donnell v State Farm Mutual Automobile Ins Co,* 404 Mich 524, 544; 273 NW2d 829 (1979), *app dis* 444 US 803; 100 S Ct 22; 62 L Ed 2d 16 (1979). Assuming that a claimant is entitled to other benefits under federal or state law, the test for determining whether no-fault insurance benefits must be reduced by the amount of the governmental benefit is two-pronged:

(1) the governmental benefit must substantially serve the same purpose as that served by the no-fault benefits, and

(2) the governmental benefit must be payable as a result of the same accident. *Jarosz v DAIIE,* 418 Mich 565, 577; 345 NW2d 563 (1984).

If both prerequisites are satisfied, then the governmental benefits are said to duplicate the no-fault benefits and setoff is required. *Id.,* p 580. Under *Jarosz,* social security old age benefits do not duplicate no-fault benefits.

Nadine Perkins' monthly pension of $483.60 is

payable under MCL 28.107(4); MSA 3.337(4), which provides:

"If a member who continues as a member of the department of state police on and after the date he acquires 10 years of service credit and dies leaving a surviving spouse prior to the effective date of the member's retirement, while a member of the department, that spouse shall receive a pension computed in the same manner, in all respects, as if the member had retired effective the day preceding the date of death, and nominated the spouse as beneficiary. The amount of pension payable monthly to the surviving spouse shall be equal to the member's years of service credit, not to exceed 25 years, multiplied by 2% of his average annual salary for his last 2 years of service. Payment of the pension shall begin the first day of the calendar month next following the month in which the member dies. The retirement allowance shall continue to the spouse until death. If there is no surviving spouse, or upon the spouse's death, then the pension shall be paid to the children under the age of 18 years, of such member, share and share alike. In the event of the spouse's death, and no eligible children, there shall be paid to the deceased member's estate or his legal representatives any residual accumulated contributions and interest made by him into the fund. A monthly benefit shall not be payable under this section if a monthly allowance is payable under any other section of this act."

Nadine Perkins' pension is thus payable under state law and must be scrutinized under the *Jarosz* test to determine whether it duplicates no-fault insurance benefits.

It is not seriously disputed that both benefits are payable as a result of the same accident.[2] The

[2] Plaintiffs do argue that the pension benefits and no-fault benefits are not payable as a result of the same accident because in order to receive the pension benefits the decedent must also have completed more than 10 years of service. While it is true that 10 years of service is a condition of receiving the pension provided under MCL 28.107(4);

dispositive inquiry is whether Nadine Perkins' pension serves substantially the same purpose as that served by the no-fault benefits. The trial court concluded that the same purpose was not served by the no-fault survivors loss benefits and the police pension:

"The no-fault survivors' benefit protects dependents against the loss of a wage earner's support. The benefits are payable because the wage earner is no longer working and able to provide the support. Conversely, this pension protects a widow from losing the spouse's retirement security. Here the pension benefits are paid to Mrs. Perkins only because her husband is unable to receive them because of his death. The pension is an asset Mr. Perkins was entitled to based on his contributions and his years of service. Mrs. Perkins receives the pension only as his beneficiary.

"Since it is designed to provide protection against a different kind of loss, the pension does not duplicate the no-fault survivors' benefit. Therefore, the defendant is not entitled to a setoff for the pension benefits received by Mrs. Perkins."

We agree with the trial court's analysis. No-fault survivors benefits are designed to replace the loss of income or wages that decedent would have enjoyed had he continued his employment. *Jarosz, supra,* p 580. No-fault survivors benefits thus duplicate workers' compensation benefits, *Mathis v Interstate Motor Freight System,* 408 Mich 164; 289 NW2d 708 (1980), and social security survivors loss benefits, *O'Donnell, supra.*

Contrary to the defendant's argument on appeal, however, we find that the State Police pension is intended to protect the decedent's retirement contributions and is not intended to replace dece-

---

MSA 3.337(4), it is clear that the receipt of both benefits are triggered as a result of the same accident. The decedent was not receiving the pension prior to the accident.

dent's wages. MCL 28.107(4); MSA 3.337(4) clearly refers to the pension as a retirement benefit. Under that provision, a spouse is entitled to a pension computed as if the deceased had retired the day preceding his or her death. Further, the pension is referred to as a "retirement allowance" payable to the widow until death only if the trooper had accrued at least 10 years of service.

We find support for our interpretation of MCL 28.107(4); MSA 3.337(4) in *Teddy v Dep't of State Police,* 102 Mich App 412, 420-422; 301 NW2d 876 (1980), in which this Court held that recovery of a state police pension does not bar recovery of a workers' compensation award. The Court found that the pension received under MCL 28.107; MSA 3.337 is intended as a retirement pension and does not, therefore, duplicate workers' compensaion benefits intended to replace income loss. Our opinion extends the analysis one step further: the Michigan State Police pension does not duplicate no-fault survivors loss benefits intended to replace income loss.[3] We thus affirm the trial court's refusal to consider Nadine Perkins' pension to reduce her no-fault benefits.

Defendant next argues that the trial court incorrectly computed the amount of the social security benefits to be set off against the no-fault benefits. Under the facts of this case, the different computa-

[3] At oral arguments, defendant relied for support upon *Krygel v Detroit,* 135 Mich App 187; 353 NW2d 116 (1984). In that case, plaintiff was a police officer with the City of Detroit and recieved charter benefits pursuant to Chapter 21, § 18 of the 1974 Charter of the City of Detroit. In determining whether those charter benefits should be set off against no-fault insurance benefits, the Court held that because the charter benefits were elected in lieu of workers' compensation benefits, which may be set off against no-fault benefits, the insurers should also be allowed to set off the charter benefits. This Court agreed with the insurer's position in *Krygel.* For reasons already stated in our opinion, *Krygel* is not dispositive in the instant case. Unlike City of Detroit charter benefits, the state police pension does not duplicate workers' compensation benefits.

tion methods advocated by plaintiffs and by the defendant yields less than a $3 difference. Defendant says it pursues this issue for precedential purposes.

In computing the amount of setoff under § 3109(1), defendant contends that the sum of governmental benefits payable on behalf of the insured should be deducted from the sum of the no-fault benefits payable. The difference between these two sums, assuming that the no-fault benefits are greater, is then distributed as provided under the no-fault act. The trial court employed a different method in computing the amount of setoff in this case. First, each claimant's no-fault benefits were separately calculated. Each separate award was then reduced by the amount of the governmental benefits payable to that claimant. Thus, after determining that Daniel and Coreen Perkins' share of the no-fault benefits was equivalent to the amount owing in child support obligations, $151.66 per child per month, the trial court reduced each child's no-fault award by the amount of social security benefits received and held that neither child was entitled to no-fault benefits. The result is that approximately $3 in social security benefits received by Daniel and Coreen Perkins are not deducted from the no-fault benefits.

The trial court further determined that Nadine Perkins was entitled to the maximum of $1,870 per month under MCL 500.3108; MSA 24.13108, reduced both by the amount of social security benefits received by her and her son ($306) and by the amount of no-fault benefits that would have been paid to Daniel and Coreen Perkins but for the social secuirty benefits ($303.33). The trial court thus calculated Nadine Perkins' share of the no-fault benefits as $1,260.67.

Defendant relies on the Supreme Court's recent

decision in *Thompson v DAIIE,* 418 Mich 610; 344 NW2d 764 (1984), in which the Court held that social security benefits received by the insured's wife and dependent children were to be lumped with his social security benefits in determining the amount to be set off against the no-fault benefits otherwise due. In that case, the insured, his wife and children were all part of the same household so that the receipt of social security benefits by any member of that household duplicated the no-fault benefits paid to the insured for the purpose of replacing the amount he would have contributed to the household in wages. Justice LEVIN expressly acknowledged that the same analysis would not necessarily apply where the insured, due to divorce, is or was not part of the same household as his or her dependents. 418 Mich 617, fn 8. We thus conclude that *Thompson* is not controlling on whether the social security benefits received by Daniel and Coreen Perkins should be lumped together with the social security benefits recieved by Nadine and Kuhn Perkins for purposes of computing the amount to be subtracted from the no-fault benefits in this case.

Instead, we adopt the trial court's method of computation where governmental benefits under MCL 500.3109(1); MSA 24.13109(1) are received by an insured's dependents comprising more than one household. No-fault benefits are reduced by certain governmental benefits only to avoid double recovery or redundant payment windfalls. Social security survivors loss benefits to Daniel and Coreen Perkins duplicate no-fault insurance benefits payable in this case only to the extent that Daniel or Coreen would have enjoyed the benefit of the decedent's income. Because Daniel and Coreen Perkins would have benefitted from the deceased's income in the amount of $303.32 per month, that

is the correct amount which should be subtracted from the no-fault benefits under § 3109(1) of the no-fault act.

Finally, defendant contends that the trial court erred in awarding both prejudgment interest under MCL 600.6013; MSA 27A.6013 and interest on overdue payments under MCL 500.3142; MSA 24.13142. We disagree on the basis of this Court's reasoning in *Nash v DAIIE,* 120 Mich App 568, 572-573; 327 NW2d 521 (1982), *lv den* 417 Mich 1088 (1983). See also, *Wood v DAIIE,* 413 Mich 573, 589; 321 NW2d 653 (1982), and *Fortier v Aetna Casualty & Surety Co,* 131 Mich App 784, 793-794; 346 NW2d 874 (1984).

Affirmed.