**AMERICAN FAMILY INSURANCE COMPANY, Plaintiff–Appellee,**

v.

**Gale F. BARNETT and Gary Barnett, Defendants–Appellants.**

No. 90CA572.

Colorado Court of Appeals, Div. I.

May 23, 1991.

Rehearing Denied July 5, 1991.

Certiorari Granted Dec. 23, 1991.

Kane, Donely & Shaffer, Thomas Kelly Kane, Colorado Springs, for plaintiff-appellee.

Law Offices of Frederick Newall, Frederick W. Newall, Colorado Springs, for defendants-appellants.

Opinion by Judge PIERCE.

Defendants, Gail F. and Gary Barnett, seek review of a declaratory judgment which held that the limit of payable benefits clause in their automobile insurance policy was valid and was properly applied to deduct, as collateral source payments, the payments they received from Social Security disability insurance. We affirm.

Defendants first argue that the collateral source limitation contained in § 13–21–111.6, C.R.S. (1987 Repl.Vol. 6A) is unconstitutional in that it applies retroactively to reduce existing substantive rights, impairs contractual rights in violation of the contracts clause, and operates to deny equal protection of the law. In any event, they contend that the statute is inapplicable to Social Security disability benefits.

We conclude that the setoff is proper under the insurance policy itself. There is, therefore, no need to review the constitutional questions regarding the application of the statute to these facts.

The policy here defines "bodily injury" as "bodily injury to or sickness, disease or death of any person." It then cautions the insured that any amount due pursuant to payable coverage "will be reduced by any payment made to [the injured person] under the Uninsured Motorist coverage of this policy."

The limits of liability clause for uninsured and underinsured motorists coverage states, in pertinent part, that covered losses caused by an underinsured motorist is excess over any collectible auto liability insurance payments, but that any amounts payable will be reduced by a "payment made or amount payable because of bodily injury under any worker's compensation or disability benefits law or any similar law."

Defendants argue that this language is ambiguous since the limitations clause does

not specifically reserve a setoff of Social Security disability benefits. Also, they argue that the language "because of bodily injury" necessarily excludes such benefits since they are intended to compensate for lost earnings rather than pain and suffering. Finally, defendants contend that the policy cannot, consistent with public policy, be applied to allow Social Security disability benefits as a valid offset.

## I.

The determination as to whether a contract provision is ambiguous is a question of law for the court to decide. *McLaughlin v. Allen,* 689 P.2d 1169 (Colo. App.1984). The provision at issue here is preceded by the language of limitation which reasonably contemplates a setoff of Social Security disability benefits. It is, therefore, not reasonably susceptible to more than one meaning and will be enforced as written. *See Northern Insurance Co. v. Ekstrom,* 784 P.2d 320 (Colo. 1989); *see also Britton v. Safeco Insurance Co.,* 104 Wash.2d 518, 707 P.2d 125 (1985) (holding identical setoff clause to be clear and unambiguous regarding this issue).

## II.

This clause, as applied to offset benefits received from social security disability insurance, is not unconscionable or in violation of public policy.

For a court to determine whether a setoff for benefits under federal or state law is allowable, it is necessary to inquire whether the governmental benefit serves the same purpose as the insurance coverage and whether the governmental benefit is payable as a result of the same accident. *Perkins v. Riverside Insurance Co.,* 141 Mich.App. 379, 367 N.W.2d 336 (1985).

Here, the benefits under defendants' uninsured motorists coverage and under Social Security disability insurance are payable because of defendants' accident. Both benefits serve the same purpose. Social Security disability benefits compensate an insured for income lost from bodily injury. *Perkins v. Riverside Insurance Co., supra.* On the other hand, uninsured motorist coverage assures the availability of insurance protection for any loss, including lost wages, caused by financially irresponsible motorists. *Kral v. American Hardware Mutual Insurance Co.,* 784 P.2d 759 (Colo.1989); *Newton v. Nationwide Mutual Fire Insurance Co.,* 197 Colo. 462, 594 P.2d 1042 (1979). In both cases, the intended protection is against financial loss, and thus, the criteria for permitting a setoff are present here.

A limitations clause in an insurance policy such as this would be considered unconscionable if, unlike here, the result is a reduction of uninsured or underinsured motorist coverage in contravention of the established statutory minimums. *See Nationwide Mutual Insurance Co. v. Hillyer,* 32 Colo.App. 163, 509 P.2d 810 (1973). The statutory minimum here is $25,000 for one person, *see* § 42–7–103, C.R.S. (1984 Repl.Vol.), and the offset of benefits will not lower defendants' recovery anywhere near this minimum.

The situation here is, likewise, distinguishable from *Newton v. Nationwide Mutual Fire Insurance Co., supra.* At issue in *Newton* was the validity of a policy provision which allowed the insurer to subtract from amounts payable under uninsured motorists coverage any amounts owing from PIP claims and required under the No–Fault Act. Such provision was declared void as against public policy because it allowed an insurer to provide less than the statutorily required minimum coverage of uninsured motorists coverage.

Here, by contrast, the trial court found that defendant recovered from her insurer the applicable uninsured motorist limits which were double the minimum required by statute, in addition to no-fault and Social Security disability benefits. This is consistent with the legislative intent to assure the availability of insurance protection against financial loss, and to "permit insureds to protect themselves against [such] loss, up to policy limits, resulting from the negligent conduct of financially irresponsible motorists." *Kral v. American Hardware*

*Mutual Insurance Co., supra; see also Alliance Mutual Casualty Co. v. Duerson,* 184 Colo. 117, 518 P.2d 1177 (1974).

Judgment affirmed.

CRISWELL, J., concurs.

DUBOFSKY, J., dissents.

Judge DUBOFSKY dissenting.

I respectfully dissent.

The insurance contract involved here states in relevant part that:

> "Limits of Liability ... Any amounts payable will be reduced by: (3) payment made or amount payable because of bodily injury under any worker's compensation or disability benefits law or other similar law."

Section 10–4–609(2), C.R.S. (1987 Repl. Vol. 4A) requires an insurer to offer the named insured the right to obtain uninsured motorist (UM) or underinsured motorist (UIM) coverage up to $100,000 per person and $300,000 per accident. Section 10–4–609(1), C.R.S. (1987 Repl.Vol. 4A) requires an insurer to offer the named insured UM coverage of $25,000 per person and $50,000 per accident. Section 10–4–609(4), C.R.S. (1987 Repl.Vol. 4A) states that uninsured motorist coverage is applicable to a vehicle of a UIM.

Here, the insurer obtained a declaratory judgment from the trial court which determined that American Family Insurance Co. (American) may deduct from its UIM coverage the payments received by defendant from Social Security disability payments. Defendant had $100,000/$300,000 UIM motorist coverage, but because the driver of the other vehicle has already paid $50,000 in liability coverage, only $50,000 of the original UM coverage is potentially available to defendant.

The majority recognizes it would be contrary to public policy to permit a deduction of disability benefits from a UM policy in the minimum amount of $25,000/$50,000. *See Newton v. Nationwide Mutual Fire Insurance Co.,* 197 Colo. 462, 594 P.2d 1042 (1979).

In the *Newton* holding the court determined that since the General Assembly had statutorily set the amount of UM coverage, personal injury protection benefits could not be deducted from this UM coverage. In reaching this determination, the *Newton* court relied heavily on the legislative purpose underlying the policy of providing liability and uninsured motorist protection to persons injured from the negligence of financially irresponsible motorists. *See Parfrey v. Allstate Insurance Co.,* 815 P.2d 959 (Colo.App.1991).

This strong legislative policy is found in § 42–7–102, C.R.S. (1984 Repl.Vol. 17) which states in relevant part:

> "The general assembly ... is also very much concerned with the financial loss visited upon innocent traffic accident victims by negligent motorists who are financially irresponsible ... [I]t is the policy of this state to induce and encourage all motorists to provide for their financial responsibility for the protection of others, and to assure the widespread availability to the insuring public of insurance protection against financial loss...."

Here, the insurer was statutorily required to offer the insured $100,000/ $300,000 UM/UIM coverage, and the insured purchased such coverage. *See Parfrey v. Allstate Insurance Co., supra.* In my view, if an offer of a set amount of uninsured motorist coverage is statutorily mandated and that amount is accepted by the insured, then the total amount of uninsured motorist insurance available should not be reduced because of the payment of other insurance benefits. *See Booth v. Seaboard Fire & Marine Insurance Co.,* 431 F.2d 212 (8th Cir.1970); *Britton v. Safeco Insurance Co.,* 104 Wash.2d 518, 707 P.2d 125 (1985); *Geyer v. Reserve Insurance Co.,* 8 Ariz.App. 464, 447 P.2d 556 (1968); *Peterson v. State Farm Mutual Automobile Insurance Co.,* 238 Or. 106, 393 P.2d 651 (1964).

The fact that § 10–4–609(2) only requires an offer of $100,000/$300,000 does not significantly affect the view that such offers, when accepted, are akin to a statutorily mandated minimum amount of insurance.

Colorado is one of those states in which uninsured motorist coverage is not by statute automatically a part of every insurance policy. Rather, § 10–4–609(1) requires the insurer to offer minimum amounts, but that minimum coverage can be rejected by the insured. Therefore, arguably in Colorado the statutory minimum UM coverage is zero.

The minimum amount of UM/UIM coverage which results from a statutorily directed offer and acceptance cannot be reduced because of the injured party's receipt of his or her insurance benefits. *See Geyer v. Reserve Insurance Co., supra; see also Newton v. Nationwide Mutual Fire Insurance Co., supra.* Thus, the issue is whether in mandating that an offer of $100,000/$300,000 of UM/UIM coverage, the General Assembly intended that, if such offer was accepted, the insurer was to retain the right to deduct other disability payments from the total amount of the policy.

There is no indication that the General Assembly intended the statutorily directed coverage under § 10–4–609(2) to be treated differently than the coverage directed under § 10–4–609(1). The General Assembly has not indicated that it is permissible to reduce the $100,000/$300,000 UM/UIM coverage in § 10–4–609(2) by subtracting from those amounts payments made under a disability policy. Furthermore, by requiring an offer of $100,000/$300,000 in UM and UIM coverage under § 10–4–609(2), it has indicated that if this offer is accepted, then such increased amounts become the statutorily directed amount of coverage available to the insured. Thus, under *Newton,* any deductions for disability payments from that total amount is contrary to public policy.

There are additional reasons why it is inappropriate to permit a deduction of disability payments from the total amount of uninsured motorist coverage. If unrestricted deductions from the remaining $50,000 of the UIM policy are permitted, the result could be that the remaining UIM coverage will be reduced to zero. Also, UM policies are to be construed in favor of the insured and in favor of providing coverage so that an insured's payment of premi-

ums is not in effect a nullity. *See* G. Couch, *Cyclopedia of Insurance Law,* §§ 45:628 & 45:629 (2d rev. ed. 1981); *see also Hackman v. American Mutual Liability Insurance Co.,* 110 N.H. 87, 261 A.2d 433 (1970); *Waggaman v. Northwestern Security Insurance Co.,* 16 Cal.App.3d 571, 94 Cal.Rptr. 170 (1971) (impermissible to deduct future payment of disability benefits from present UM coverage as such prospective payments are too speculative).

In order to obtain Social Security disability benefits, a claimant must be severely injured and prevented from working. *See* 42 U.S.C. §§ 418 and 423 (1988). A person who is not injured severely enough to qualify for Social Security disability benefits would therefore not have his or her UIM coverage reduced.

Social Security disability benefits often represent only partial compensation to a person because of their disabling injuries. In most instances such payments do not provide complete compensation for the injured party's economic losses. Furthermore, such payments do not even purport to compensate the person for non-economic losses.

A UM/UIM policy provides compensation to wrongfully injured parties for the same type of injuries and losses for which they would be compensated for if the tortfeasor was financially able to provide full compensation. *See Newton v. Nationwide Mutual Fire Insurance Co., supra.* In *Peterson v. State Farm Mutual Insurance Co.,* 238 Or. 106, 393 P.2d 651 (1964), the court stated:

> "[T]he legislative purpose in creating compulsory uninsured motorist coverage was to place the injured policyholder in the same position he would have been in if the tortfeasor had had liability insurance."

Since it permits recovery for general damages, an uninsured motorist policy would, therefore, for example, permit recovery for pain and suffering, loss of enjoyment of life, disfigurement, anxiety, loss of earning capacity, and loss of time. Hence, the potential basis for recovery for injuries and losses under UM/UIM policies is much greater than the economically lim-

ited recovery from Social Security disability payments. The policy of uninsured motorist coverage should be, if possible, fully to compensate seriously injured parties and not to allow only the lesser injured ones, *i.e.*, those not qualifying for disability under Social Security to receive full compensation for their injuries. *See* 2 A. Widiss, *Uninsured & Underinsured Motorist Insurance* § 32.5 (1990).

The majority opinion strongly suggests that the amount deducted from the insured's policy for Social Security payments operates solely to prevent a double recovery by the injured parties. This clause, however, does not only prevent a double recovery. Rather, it permits a deduction by the insurer from the total UM/UIM coverage for each dollar received from disability payments. Since the payments of Social Security benefits provides less than full compensation to an injured party, the reduction from the total UIM coverage for each dollar paid in disability restricts or prohibits an injured party from receiving the entire range of compensation that is supposed to be available to him under his UM/UIM coverage. *See Newton v. Mutual Insurance, supra.*

There is a substantial difference between an insurance policy which prohibits double recovery for benefits received but does not reduce the total coverage available versus the policy here which does reduce the total coverage available. *See Booth v. Seaboard Fire & Marine Insurance Co., supra.*

In my view, the method of deducting from the total UIM insurance available the Social Security disability payments prohibits injured parties from receiving full benefits under these policies. Therefore, it undermines the legislatively stated purposes of providing full coverage to persons injured by the negligent conduct of others. Hence, I would hold this policy provision to be contrary to public policy because it permits diminution of the statutorily directed $100,000/$300,000 coverage.